## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**CHENEQUA P. WILLIAMS**
8949 N. 97th Street, Apt. #C22
Milwaukee, WI 53224,

      Plaintiff,

      v.                                                                          Case No. 23-CV-1609

**STAINLESS FOUNDRY & ENGINEERING, INC.**
5110 N. 35th Street
Milwaukee, WI 53216,

      Defendant.

## COMPLAINT

The plaintiff, Chenequa P. Williams, by her attorney, William R. Rettko, alleges and shows

to the Court as follows:

### NATURE OF THE CASE

Plaintiff brings this action to have the same terms, conditions and privileges of employment

with the defendant because of her gender, together with depriving her employment opportunities

that adversely affected her status as an employee because of her gender in violation of 42 U.S.C.

§ 2000e-2 (Title VII) and in retaliation for plaintiff opposing discriminatory employment practices

under 42 U.S.C. § 2000e-3 Title VII.

### JURISDICTION AND VENUE

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343, and 2201, as

well as the Equal Employment Opportunity Commission's Notice of Right to Sue Within 90 Days;

a copy of which is attached hereto as Exhibit A as authorized by 42 U.S.C. § 2000e-2 (Title VII).

1.      Plaintiff, Chenequa P. Williams ("Williams"), is a female adult residing at 8949 N. 97th Street, Apt. # C22, Milwaukee, State of Wisconsin, and was employed by Stainless Foundry and Engineering as a Welder I from August 16, 2021 to December 2, 2022.

2.      Defendant, Stainless Foundry & Engineering, Inc. ("Stainless Foundry") is a business organized and operating under the laws of Wisconsin with approximately 170 employees which maintains its principal offices at 5110 N. 35th Street, Milwaukee, Wisconsin 53216 and is and was at all material times hereto the employer of Williams.

## STATEMENT OF CLAIMS

3.      On or about July 7, 2022, Gidean Milambo ("Milambo"), a male co-worker of Williams at Stainless Foundry approached Williams to see if she was interested in having a relationship with him to which Williams informed Milambo she was not interested as she was already in a relationship.

4.      Then on the following day, Williams received a Facebook message from Milambo to which Williams responded on the Messenger app that she was not interested in a relationship with him as she was already in a relationship.

5.      On July 15, 2022, Williams was confronted by Milambo who entered Williams' welding booth while she was welding and tried to kiss her to which Williams resisted.

6.      The July 15th incident was observed by a co-worker who after speaking with Williams informed Milambo that if he ever came near Williams again, he'd report Milambo to Human Resources.

7.      On July 18, 2022, Williams went to her supervisor to report what Milambo did to her on the previous Friday, July 15th and Williams was instructed to go to Peter Kocian ("Kocian")

2

in Human Resources who informed Williams she would be okay as Milambo would be instructed to stay out of Williams' work area.

8.      On August 28, 2022 Williams contacted Milambo via text to apologize for going to Human Resources to complain about him as it had been bothering her as she was thinking this action made her a troublemaker for having reported Milambo, but in making this text Williams further indicated she did not wish to have a relationship with anyone at work.

9.      Following this text, Milambo attempted to communicate with Williams via text messaging multiple times and also on Facebook all of which resulted in Williams responding to Milambo in an October 18, 2022 text to "Please stop contacting me.  Thank you for your concern."

10.      Then on November 15, 2022, just before Williams was ready to leave work for the day, Milambo entered her welding booth and tried to kiss her four times, which Williams resisted as she tried to place her chair between them.

11.      Despite Williams' efforts, Milambo began to slap pat her face, and repeatedly called Williams his baby and said he was going to get her "puss".

12.      Williams was then able to use her chair to push Milambo out of her booth while repeatedly telling Milambo she was not interested in him, all of which was witnessed by co-workers.

13.      Williams immediately went to the wax room to tell her lead person that night of the incident of Milambo's sexual assault of her, and then texted her supervisor about the incident indicating she would talk to him more about the incident the next day.

14.      On November 16, 2022, Williams was advised by her supervisor to report this second Milambo work incident to Human Resources which she did as she met with Kocian together with a co-worker who witnessed the incident to describe Milambo's actions toward her

the previous day to which Kocian told Williams that he would investigate the matter, and that she was not to talk any further to her supervisor about the Milambo incident.

15.     On November 17, 2022, Williams informed her supervisor that even though the previous workday ended well, she needed to have that day off to get back to balance and in control of her thoughts because even though she was not raped, she felt the trauma of Milambo's unwanted advances and threat of danger.

16.     By November 22, 2022, Williams who had not heard anything back from Kocian about his investigation into the Milambo incident, but had been reporting to work despite being scared and full of anxiety as nothing had been done to discipline Milambo, contacted the Sojourner Truth House, who assisted her with how to legally move forward with the Milambo incident.

17.     As a result of contacting the Sojourner Truth House for advise, on November 22, 2022, Williams contacted the Milwaukee Police Department about the Milambo sexual assault of her at work by coming to her booth, making physical suggestions, physical contact, touching her, trying to kiss her repeatedly, slapping her buttocks and some other things which resulted in the Milwaukee Police issuing a citation to Milambo for "mashing".

18.     In addition, on November 22, 2022, Williams filed for a Temporary Restraining Order (Temporary Order for Protection) and Notice of Injunction Hearing (Harassment) against Milambo in Milwaukee County Circuit Court under Case No. 2022-CV-7478 which would remain in effect until December 6, 2022 when an injunction hearing was set to be heard.

19.     Further, on November 22, 2022, Kocian sent Williams an email acknowledging that she had filed her claim for short term disability with Mutual of Omaha as she was unable to continue working due to the workplace stress caused by Milambo's actions of November 15th.

4

20.     On November 28, 2022, via email Kocian sent Williams the requested FMLA paperwork to complete from which Williams responded to Kocian and her supervisor via email that she would not be in work on November 29th as she was going to her doctor to complete the FMLA paperwork and to have the doctor provide Stainless Foundry with a doctor's excuse.

21.     Kocian responded to Williams email that was ok, but to reread the attendance policy as it was a no-fault policy with no need for a doctor's excuse.

22.     On December 2, 2022, Kocian emailed Williams to inform her that they had not heard from her for three days and in accordance with company policy, that with three days of no-call no-show she was terminated effective that day.

23.     On December 6, 2022, the injunction hearing for Williams in Milwaukee County Circuit Court was postponed as Milambo appeared with a French Interpreter and the matter was adjourned to December 20th with the temporary restraining order to remain in effect until December 20, 2022.

24.     On December 20, 2022, the injunction hearing went forward, and the matter was dismissed to which Williams filed a DeNovo review which was then set for January 19, 2023.

25.     On January 19, 2023, the court heard the DeNovo Hearing on Williams' request for an Injunction against Milambo to which Kocian appeared as a witness to testify for Milambo.

26.     Despite Kocian's testimony that based on his investigation there was no evidence of Milambo sexually assaulting or harassing Williams, the Court found that Milambo had indeed sexually assaulted Williams and granted the Injunction for one year preventing Milambo to have any contact with Williams in person or in any other form to include but not limited to email, text, Facebook or any other method in which contact could occur.

5

## FIRST CAUSE OF ACTION
## DISCRIMINATION ON THE BASIS OF GENDER IN VIOLATION OF TITLE VII

27.     Reallege and incorporate herein by reference paragraphs 1 through 26 of this Complaint as if set forth at length herein.

28.     Stainless Foundry discriminated against Williams based on her gender (female) in allowing Milambo to make unwelcome, severe and pervasive actions and comments that created a hostile work environment for her without punishing Milambo even after being told before to stay away from Williams because she was a female after she put Human Resources on notice of the November 15 incident in in violation of 42 U.S.C. § 2000e-2 (Title VII).

29.     At the time of Williams reporting Milambo's actions to Human Resources she had been adequately performing her assigned duties.

30.     As a result of the discriminatory treatment, Stainless Foundry caused Williams to lose wages and benefits, together with emotional distress, physical harm and loss of reputation, loss of future wages and benefits, and loss of future job opportunity, together with attorney fees, disbursements and costs as allowed by law.

31.     Stainless Foundry's actions in discriminating against Williams together with their deliberate and reckless indifference entitles Williams to punitive damages as assessed by a jury.

## SECOND CAUSE OF ACTION
## RETALIATION IN VIOLATION OF TITLE VII

32.     Reallege and incorporate herein by reference paragraphs 1 through 31 of this Complaint as if set forth at length herein.

33.     Stainless Foundry has retaliated against Willaims for engaging in protected activity under Title VII for first notifying Human Resources and her supervisor of the workplace sexual assault/harassment she was enduring and opposing in the workplace.

6

34.     Stainless Foundry retaliated against Williams by terminating her for failing to call into work although knowing she was under the treatment of a doctor and was unable to report to work due to the emotional distress she was enduring from the sexual assault/harassment she endured at work at the hands of a co-worker.

35.     Had Williams not engaged in protected activity under Title VII, Stainless Foundry would not have retaliated against her for identifying the sexual assault/harassment she had endured which was the substantial and motivating factor to terminate Williams to dissuade other employees from filing similar claims.

36.     As a result of the retaliation Williams received from Stainless Foundry, Williams was terminated wherein she suffered compensatory damages, including emotional distress and physical harm, loss of reputation, loss of past and future wages and benefits, together with attorney fees, disbursements and costs as allowed by law.

37.     In addition, the actions of Stainless Foundry in retaliating against Williams together with their deliberate and reckless indifference of Williams' protected activity under Title VII entitles Williams to punitive damages as assessed by a jury.

**WHEREFORE**, Plaintiff Chenequa Williams respectfully requests that this Court:

A.     Assume jurisdiction of this case;

B.     Declare that the defendant's actions while acting under the color of law caused an unlawful employment practice against Chenequa Williams by their acts of discrimination made unlawful under 42 U.S.C. 2000e-2 (Title VII);

C.     Declare the defendant's actions while acting under the color of law caused an unlawful employment practice against Chenequa Williams by their actions of retaliation

7

against her for following the internal complaint procedure to stop workplace sexual assault/ harassment in violation of Title VII;

D.      Award compensatory damages for emotional distress, mental anguish, physical harm, and loss of reputation against the defendant in the sum to be determined by a jury;

E.      Award punitive damages against the defendant in a sum to be determined by a jury;

F.      Award loss of back pay, future pay, and benefits.

G.      Grant costs, disbursements and attorney fees in bringing this action; and

H.      Grant such further relief as the Court deems just and equitable.

**A TRIAL BY JURY IS HEREBY DEMANDED.**

Respectfully submitted, this 30th day of November, 2023.

**RETTKO LAW OFFICES, S.C.**
Counsel for Plaintiff
s/William R. Rettko
State Bar No. 1002608
15460 W. Capitol Drive, Suite 150
Brookfield, WI  53005
(262) 783-7200
bill@rettkolaw.com

8